UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**RODERICK R.,**

**Plaintiff,**

    v.                                     Case No. 1:21-cv-00577-TPK

**COMMISSIONER OF SOCIAL**         **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security. That decision, issued by an administrative law judge on March 18, 2021, following an order of remand from this Court and, subsequently, from the Appeals Council, denied Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 8). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I. BACKGROUND

The procedural history of this case up to the date of the Court's remand order is set forth in the Decision and Order filed in Case No. 1:18-cv-1307 on January 27, 2020. Briefly, Plaintiff had filed an application for disability insurance benefits alleging disability beginning on March 16, 2014, and that application had been denied. The Court remanded the case to the Commissioner because the ALJ had crafted a residual functional capacity finding without the benefit of medical opinion evidence. After remand, Plaintiff was given a second administrative hearing before an Administrative Law Judge on November 19, 2020. Plaintiff, a medical expert, Dr. Fuchs, and a vocational expert, Danielle Hetu, all testified at the hearing.

In a decision dated March 18, 2021, which addressed both the 2014 application and a subsequently-filed application for supplemental security income, the Administrative Law Judge denied benefits. She found, first, that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019, and that he had not engaged in substantial gainful activity since the alleged onset date. Next, the ALJ determined that Plaintiff suffered from severe impairments including left shoulder SLAP type II and mild degenerative changes; status post meniscectomy of the bilateral knees; effusion and chondromalacia; synovial cyst; bilateral

knee osteoarthritis; multilevel spondylotic changes of the cervical spine; cervical radiculopathy; and moderate degenerative joint disease of the bilateral hip joints. She also concluded, however, that these impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of light work. He could sit for only two hours at a time (but up to eight total hours in a workday) and could stand and walk for only one hour at a time (but up to 3-4 hours in a workday). Additionally, he could occasionally lift with his non-dominant arm and also occasionally reach overhead with that arm. He could also occasionally balance, stoop, kneel, crouch, climb ramps and stairs, and drive motor vehicles but could never crawl or climb ladders, ropes, or scaffolds or operate foot controls bilaterally. He also could tolerate occasional exposure to unprotected heights, moving mechanical parts, humidity, wetness, and temperature extremes, but could not work around vibration.

The ALJ next found that, with these limitations, Plaintiff could perform his past relevant work as a sales representative, which was a light, semi-skilled job. Alternatively, she concluded, based on the vocational testimony, that Plaintiff could also do other light or sedentary jobs such as bench assembler, folding machine operator, and survey (sic) system monitor. She found that such jobs existed in significant numbers in the national economy. Based on these findings, the ALJ concluded that Plaintiff did not meet the requirements for disability under the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises two issues. He argues (1) that the ALJ failed to reconcile an apparent conflict between the Dictionary of Occupational Titles and the vocational expert's testimony; and (2) that once that conflict is properly resolved, there are no jobs which exist in significant numbers for Plaintiff to perform.

## II.  THE KEY EVIDENCE

Because the issues raised by Plaintiff deal exclusively with the vocational evidence, only a brief summary of the other evidence is needed. Plaintiff testified that he last worked in 2012 and that he stopped working after undergoing a second knee surgery. He also had issues with his shoulder and neck as well as his left hand and he wore a brace on his leg. Vocational testimony at the first administrative hearing indicated that Plaintiff's past jobs included floor installer, food preparer, and sales representative, the last of which was light and semi-skilled. Dr. Fuchs, the medical expert who testified at the second administrative hearing, said that Plaintiff was able to do a reduced range of light work - the same residual functional capacity which the ALJ incorporated into his findings.

At the second hearing, the vocational expert, Ms. Hetu, was asked questions about a person with Plaintiff's vocational profile who had the limitations described by Dr. Fuchs, including the restriction on more than occasional use of the left arm for overhead reaching. In

response, she testified that such a person could do Plaintiff's past sales clerk job, and he or she could also work as an appointment clerk, bench assembler, folding machine operator, or surveillance system monitor, and she gave numbers for each of those positions as they existed in the national economy. Ms. Hetu acknowledged that some of the physical limitations contained in the hypothetical question posed to her were not addressed by the DOT, but said that she based her answers on her experience placing individuals and working with employers and also on various other sources of data compiled by the government.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

Plaintiff's issue with the adequacy of the vocational evidence can fairly be summarized as follows. The ALJ' residual functional capacity finding included the restriction that Plaintiff could only occasionally reach overhead with his left arm. Three of the four jobs identified by the vocational expert (excluding the job of surveillance system monitor) require, according to the

DOT, frequent reaching. According to Plaintiff, these job requirements are fundamentally inconsistent with the ALJ's residual functional capacity finding, and the record does not contain any explanation of how they might be reconciled. Plaintiff argues that the result in this case is controlled by the decision in *Lockwood v. Comm'r of Social Security*, 914 F.3d 87 (2d Cir. 2019), another case which involved restrictions on a claimant's ability to perform overhead reaching, where the Court of Appeals reversed the Commissioner's decision because the ALJ did not make proper inquiry about inconsistencies between the reaching restriction and the DOT. If those three jobs were eliminated from consideration, the only remaining job would be surveillance system monitor, and with less than three thousand of those jobs existing in the national economy, Plaintiff argues that there are not a significant enough number of them to meet the requirements of the Social Security Act.

The Commissioner makes a two-fold argument in response. First, the Commissioner contends that there is no apparent conflict between the DOT and the vocational testimony because Plaintiff's overhead reaching restriction is limited to the use of his left arm, and none of the jobs at issue here appear to require bilateral overhead reaching. Second, the Commissioner argues that the vocational expert's testimony was sufficient to explain how any potential conflict was resolved. The Commissioner points out that, even if there was a lack of detail in the explanation given concerning the bench assembler or folding machine operator jobs - a point which the Commissioner does not concede - the same cannot be said of the sales clerk job, and the fact that Plaintiff can perform his past relevant work is sufficient to sustain the denial of benefits. The Commissioner does not directly address Plaintiff's last point about the number of surveillance system monitor jobs other than to suggest it is moot if the Court adopts either of the Commissioner's arguments, so the Court will not devote further discussion to that issue.

The Court finds no merit to the Commissioner's first argument. It seems clear that the restrictions found in the DOT are broad enough to encompass reaching in all directions, *see* SSR 85-15 (reaching means "extending the hands and arms in any direction"), and that the language used in that ruling ("hands and arms") contemplates reaching with both hands or both arms, *i.e.* bilateral reaching. Relevant case law bears this out. *See, e.g., Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although the *Dictionary* does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the Dictionary's broad definition of 'reaching' means that they certainly may require such reaching"). The Court therefore proceeds on the assumption that there is an apparent conflict between the DOT's reaching requirements for three of the jobs identified by the vocational expert and the Plaintiff's functional capacity. That leaves the question of whether the ALJ resolved this conflict appropriately.

SSR 00-4p sets forth the legal standard governing this issue. It reads, in pertinent part:

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the

>  DOT. In these situations, the adjudicator will:
>
>  - Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
>  - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

The ALJ was clearly aware of the potential conflict, and engaged in this exchange with the expert:

>  Q. [by the ALJ]... So, that's okay [referring to the sales clerk position] with the reaching limitation?
>
>  A. Based on my professional experience it is, it's not covered in the DOT for overhead reaching.
>
>  Q. Okay, all right. And the other reaching, I said -- oh, and the lifting, the only occasional overhead lifting?
>
>  A. Correct.

(Tr. 707). The expert confirmed that testimony later in the hearing:

>  ALJ: Okay, and can you tell me what the basis of your testimony on the neck movement, *the reaching*, anything not addressed in the DOT and that would include absences, time off task, and anything else not addressed in the DOT or inconsistent with the DOT, please.
>
>  VE: Yes, based on my experience placing individuals, working with employers, and I also utilized the data that the government provides through the operational survey, and the OES statistics.

(Tr. 714-15) (emphasis supplied). The dispositive question in this case is then narrowed down to this: did the ALJ err by not asking the expert exactly how a person who could not perform frequent bilateral overhead reaching would be able to do the sales clerk job or either of the other two jobs which, on paper, have that requirement?

    Plaintiff, relying on this Court's decision in *Yeomas v. Comm'r of Social Security*, 2019 WL 6799008 (W.D.N.Y. Dec. 12, 2019), contends that the type of general testimony given by the expert here is inadequate to support the ALJ's decision. In *Yeomas*, the vocational expert identified three jobs which a person with the claimant's limitations (including a restriction to occasional overhead reaching) could do, all of which, according to the DOT, required frequent

reaching. After rejecting the Commissioner's argument that the DOT's reaching restriction did not include overhead reaching, thereby identifying the apparent conflict between the DOT and the claimant's functional capacity, the Court concluded that the ALJ erred by finding that the vocational expert's testimony was consistent with the DOT, when, clearly, it was not. The Court also rejected the contention that the expert's testimony sufficiently explained away any inconsistency, noting that the expert, before identifying the jobs in question, simply confirmed that the ALJ was asking her to assume that there was a restriction to occasional overhead reaching, and she did not say how she resolved the apparent conflict. In the Court's words, "[t]he VE did not offer any explanation of how a limitation to 'occasional reaching' is consistent with the frequent reaching criterion in the cited DOT job descriptions and the ALJ did not ask for one." *Id*. at *4.

The Commissioner notes several differences between the facts of *Yeomas* and those of present case, including the fact that the ALJ appeared to appreciate the apparent conflict here and asked the expert to explain her testimony further. That is true. However, the ALJ made this somewhat ambiguous finding:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that in her professional experience overhead reaching restrictions were okay, although overhead reaching was not in the Dictionary of Occupational Titles.

(Tr. 655). The Court cannot tell from this finding whether the ALJ believed that the vocational expert had testified that the DOT simply does not address overhead reaching - a legal conclusion which lacks validity - or that she understood there was an inconsistency, but it had been adequately explained by the brief answer given by the expert that she included the sales clerk job among those which Plaintiff could perform because, in her professional experience, someone who could not reach overhead bilaterally on a frequent basis could still do that job. That lack of clarity alone suggests that a remand for further explanation might be needed.

That is not all, however. It is true that some courts have interpreted the language of SSR 00-4p to permit an ALJ to rely on vocational testimony that conflicts with the DOT if the expert simply affirms that his or her opinion is based on experience. *See, e.g., Doron A. A. v. Kijakazi*, 2023 WL 3190452, at *13 (E.D. Va. Feb. 15, 2023), *adopted and affirmed*, 2023 WL 3190411 (E.D. Va. May 1, 2023) (affirming an ALJ's decision where "the VE stated that she identified the occupations (ticket taker, mail sorter, and telephone information clerk) based upon her own professional experience" and where no further explanation as to how the claimant could do these jobs was provided). But this Court has not been so lenient.

As Plaintiff notes, in *Lockwood v. Comm'r of Social Security*, 914 F.3d 87 (2d Cir. 2019), the Court of Appeals addressed a very similar issue. There, the claimant could not perform any frequent overhead reaching, not even with one arm - but, as the above discussion indicates, that is

a distinction without a difference. The vocational testimony there was not quite the same as presented here; the expert simply said that her testimony was consistent with the DOT, a statement that was factually inaccurate and therefore one which the ALJ was not entitled to rely on. But the Court of Appeals went further, quoting with approval this language from *Washington v. Comm'r of Social Security*, 906 F.3d 1353, 1364 (11th Cir. 2018):

> Particularly in light of "[t]he inquisitorial nature of disability hearings"—in which claimants often appear *pro se*—we agree with the Eleventh Circuit that the Ruling must be read to "impose[ ] an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [vocational expert] if there is one."

*Lockwood*, 914 F.3d 87, 94 (2d Cir. 2019). In *Yeomas*, this Court relied on *Lockwood* and concluded that the record did not support the ALJ's decision because

> [t]he VE offered no information about the reaching requirements of the identified jobs as they are actually performed, nor did she delve into the DOTs narrative descriptions to identify some difference between overhead reaching and other types of reaching. *Despite the lack of explanation about how a similarly-situated person with an overhead reaching limitation could perform those jobs*, the ALJ did not ask any questions.

*Yeomas*, 2019 WL 6799008, at *5 (emphasis supplied).

Other decisions from this Court and in this circuit track *Yeomas's* reasoning concerning the need for an explanation as to how a claimant with restrictions inconsistent with the DOT might perform the jobs in question. For example, in *Rachel F. v. Comm'r of Social Security*, 2023 WL 2595007 (W.D.N.Y. Mar. 22, 2023), the ALJ specifically questioned the vocational expert about an apparent inconsistency between the DOT and the expert's testimony, and was told that the claimant could do the jobs identified based on the expert's professional knowledge and experience. The Court found this explanation to be inadequate and provided counter-examples where a vocational expert actually explained how a claimant with particular limitations could do the jobs at issue. And in *Matthew M. v. Comm'r of Soc. Sec.,* 2022 WL 3346949, at *4 (W.D.N.Y. Aug. 12, 2022), this Court said, regarding much the same issue presented here,

> The VE testimony did not provide clarity as to how the limitations on overhead reaching were not a conflict with the degree of reaching required by the job, other than to rely on his professional experience. Tr. 269. Given that the DOT does not break down directional reaching, the VE's response that he relied on his experience does not specifically address the conflict. Nor did the ALJ adequately address the conflict and resolve why the jobs would not require greater overhead reaching. The fact that the VE's opinion was based on his own "knowledge and experience" does not resolve the conflict.

*See al*so *Alex C. v. Kijakazi*, 2023 WL 2706232 (D. Conn. Mar. 30, 2023) (finding testimony based on expert's experience in the field of vocational rehabilitation to be inadequate to resolve such a conflict).

The Commissioner, by contrast, has cited to one decision from this Court, *Alisa O. v. Comm'r of Social Security*, 2021 WL 3861425 (W.D.N.Y. Aug. 30, 2021), which appears to reach a different result. There, the Court found the testimony of the vocational expert sufficient to explain a conflict (again, in a case involving overhead reaching) where the expert said her testimony was based on both her experience and on her knowledge of how the specific jobs were actually performed. This latter statement may serve to distinguish this case from the ones cited above, although that is a fine distinction, and it might be more accurate to say that the decisions are not easily reconciled. At least two other decisions from this Court, *Katherine J. v. Comm'r of Social Security*, 2022 WL 543247 (W.D.N.Y. Feb. 23, 2022) and *Josie T. v. Comm'r of Social Security*, 2023 WL 2259812 (W.D.N.Y. Feb. 28, 2023), relied on *Alisa O.* and appear to state that such general statements from a vocational expert satisfy the standard set forth in *Lockwood* - although a review of the actual record in those cases shows that, in *Katherine J.*, the expert actually gave quite detailed testimony about why the reaching restrictions imposed on the claimant did not preclude the performance of the jobs in question, and in *Josie T.*, the expert identified "job analysis" as one of the bases for her opinion in addition to professional experience.

Ultimately, the resolution of this case depends upon an application of the language of SSR 00-4p to the facts presented. In the Court's view, the key language is this: "If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Given the non-adversarial nature of social security proceedings and the fact that an ALJ is required to develop the record for the benefit of the claimant, *see, e.g., Washington, supra*, the Court is persuaded that this language should be read to require an ALJ - and, by extension, a testifying vocational expert - to provide an explanation about how any inconsistencies between the claimant's RFC and the DOT are resolved which states not only the reason why the expert has a basis for his or her opinion - that is, that he or she knows, through education, experience, or job analysis the actual requirements of the job or jobs in question - but how the job can be done by someone with the claimant's limitations. It is hard to conclude that the language from *Washington*, quoted in *Lockwood*, about the need for an ALJ to make a "meaningful investigatory effort" to resolve conflicts like this can mean anything else.

That requirement is especially important in a case like this, where the job at issue (Plaintiff's past relevant work as a sales clerk) involves, according to the DOT, not just some unspecified type of frequent reaching, but discrete tasks like stocking shelves with merchandise and cleaning shelves, counters, and tables. Can a person who can reach overhead frequently with only one arm do such tasks as required in a typical workday? Perhaps. But the record here does not contain an adequate basis for the ALJ's determination that Plaintiff could still do either that job or the other two jobs identified by the expert which also require frequent reaching. Simply

put, the ALJ needed to explore this question further in order to fulfill her duty to conduct a "meaningful investigatory effort." Consequently, a remand for further proceedings is required.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 8), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**